UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 8:19-cr-278-SDM-SPF
      8:20-cv-1467-SDM-SPF

SEGUNDO ORTIZ SALAZAR
_____

**ORDER**

Segundo Ortiz Salazar moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for conspiring to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, for which he is imprisoned for 188 months. Salazar challenges the district court's jurisdiction.

Under a plea agreement Salazar pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States in violation of 21 U.S.C. § 960 (b)(1)(B)(ii) and 46 U.S.C. §§ 70503(a), 70506(a) and (b). Salazar admitted to the following facts that support his guilty plea (Crim. Doc. 46 at 20–22):

> On or about June 23, 2019, a military patrol aircraft (MPA) sighted a low-profile vessel (LPV) in the international waters of the Eastern Pacific Ocean, approximately 170 nautical miles west of Punta Arenas, Costa Rica. The U.S. Coast Guard Cutter (USCGC) VIGOROUS was patrolling in the vicinity, diverted to intercept, and eventually launched its embarked small boat to pursue the vessel.
>
> Once on scene, the small boat gained positive control of the GFV, and the embarked law enforcement boarding team

conducted a right of visit (ROV) boarding to determine the nationality, if any, of the vessel. The defendants, Prudencio Panameno Ramos, Sandro Pedrea Nunez, and Segundo Aristbulo Ortiz Salazar were the three (3) crewmembers of the LPV. During the ROV boarding, defendant, Prudencio Panameno Ramos identified himself as the master of the vessel and made a verbal claim of Colombian nationality for the vessel. The vessel was not flying a flag, and had no other indicia of nationality.

Pursuant to the United States-Columbian Bilateral Agreement, the U.S. Coast Guard approached the Government of Colombia and requested confirmation of the registry and nationality of the subject GFV. The Colombian government responded that it could neither confirm nor deny the nationality of the subject vessel. Therefore and in accordance with 46 U.S.C. §§ 70502(c)(1)(A) and (d)(1)(C), the U.S. Coast Guard treated the GFV as one without nationality and therefore a vessel subject to the jurisdiction of the United States. At the time of interdiction by the Coast Guard, the GFV was seaward of the territorial seas of any nation and in international waters.

During a subsequent search of GFV, the boarding team located 158 bales containing approximately 2,130 kilograms of cocaine concealed in the bow of the vessel. The boarding team conducted two (2) NIK filed test[s] on the seized contraband, both of which tested positive for cocaine.

The defendant, Segundo Aristbulo Ortiz Salazar, willingly agreed to transport approximately 2,130 kilograms of cocaine aboard the subject vessel with his codefendants and others. The purpose of this agreement was to smuggle this cocaine into Central America through international waters and distribute the cocaine to other persons. The defendant knew that the bales onboard the subject vessel and seized by the U.S. Coast Guard contained five (5) or more kilograms of cocaine and knew that the planned voyage was a drug smuggling venture.

The district court adjudicated Salazar guilty and sentenced him to 188 months. He filed no appeal.

Salazar now moves to vacate his conviction and sentence and raises four

grounds for relief.[1]  Although Salazar procedurally defaulted his claims by not raising them on direct appeal, the district court rejects his claims as meritless.  *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.")

In Ground One Salazar claims that the United States failed to demonstrate that the vessel was without nationality and subject to its jurisdiction.  (Civ. Doc. 2 at 3)  Contrary to his admissions in the plea agreement, he asserts that the Coast Guard neglected to request that the government of Columbia confirm or deny the nationality of the vessel.  (*Id*. at 4)  And, he erroneously claims that he "did not admit to facts that gave rise to jurisdiction."  (*Id*. at 7)

Under the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70503(a), *et seq*., jurisdictional issues "are preliminary questions of law to be determined solely by the trial judge."  46 U.S.C. § 70504.  A "covered vessel" under the MDLEA is "a vessel subject to the jurisdiction of the United States[,]" which includes "a vessel without nationality" and "a vessel registered in a foreign

---

[1] Neither a claim of ineffective assistance of counsel nor a challenge to the voluntary nature of Salazar's guilty plea are properly before the district court. Without any explanation, Salazar complains that he "was misinformed of the element[s] of the offense resulting in a prejudicial jurisdictional defect in [his] guilty plea." (Civ. Doc. 2 at 2)  Also, in one sentence, Salazar complains that his "ineffective counsel did not advise [him] of [his] right to appeal nor did [counsel] exercise such right on [his] behalf." (Civ. Doc. 1 at 4).  These vague complaints are insufficient to properly raise claims of ineffective assistance of counsel or an involuntary guilty plea. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient."); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (explaining that a *pro se* litigant's mere discussion of a superficial claim does not give an opposing party fair notice of that claim); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to an evidentiary hearing "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (citations omitted).

nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. §§ 70502(c)(1)(A), (C) and 70503(e)(1). Consent or waiver of objection by a foreign nation "is proved conclusively by certification of the Secretary of State or Secretary's designee." *Id.* at § 70502(c)(2)(B).

The record refutes Salazar's claim. In the plea agreement Salazar admitted that (1) the vessel had no indicia of nationality, (2) its master claimed Colombian nationality, and (3) the government of Colombia neither confirmed nor denied the vessel's nationality thereby rendering it a vessel without nationality and subject to the jurisdiction of the United States. (Crim. Doc. 46 at 21) Consistent with those admissions, the Department of State certifies that the government of Columbia neither confirmed nor denied the vessel's registry or nationality, and therefore, the vessel was without nationality and subject to the jurisdiction of the United States. (Crim. Doc. 96) "[T]he [Department of State] certification is conclusive proof of a response to a claim of registry" and "therefore provide[s] conclusive proof that the vessel [is] within the jurisdiction of the United States under the [MDLEA]." *United States v. Campbell*, 743 F.3d 802, 809 (11th Cir. 2014).

In Ground Two Salazar claims that the district court lacked jurisdiction because "there is no accusation that [he] intended to distribute the contraband in the U.S., or cause any other effect there." (Civ. Doc. 2 at 10–17) Circuit precedent forecloses this claim. "[C]onduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Campbell*, 743 F.3d at 810. "[T]he protective principle does

- 4 -

not require that there be proof of an actual or intended effect inside the United States." *Id*. (quotations omitted); *see also United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) ("[T]he MDLEA [i]s a constitutional exercise of Congressional authority under the Felonies Clause, and . . . the conduct proscribed by the MDLEA need not have a nexus to the United States.").

In Ground Three Salazar claims that his prosecution violates due process because the conspiracy lacked any nexus to the United States. (Civ. Doc. 2 at 17) The circuit court has repeatedly rejected such due process challenges to the MDLEA. *Campbell*, 743 F.3d at 812 ("[T]he Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas."); *United States v. Cruickshank*, 837 F.3d1182, 1188 (11th Cir. 2016) (same).

In Ground Four Salazar claims that the MDLEA is an unconstitutional abuse of congressional power because "the felonies clause is textually limited to conduct on the high seas[.]" (Civ. Doc. 2 at 21)  This claim fails because the constitutionality of the MDLEA is well established by circuit precedent. *See United States v. Napa Moreira*, 810 F. App'x 702, 705 (11th Cir. 2020) ("[T]he Piracies and Felonies Clause empowers Congress to prosecute crimes committed on the high seas and, given that trafficking narcotics is 'condemned universally by law-abiding nations,' it is not 'fundamentally unfair' to punish those who traffic drugs on the high seas.") (quoting *Campbell*, 743 F.3d at 810).

Salazar's motion under Section 2255 to vacate, set aside, or correct his sentence is **DENIED**. The clerk is directed to enter a judgment against Salazar, close this case, and enter a copy of this order in the criminal case.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Salazar is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Salazar must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Salazar is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Salazar must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 19th, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE